IN THE UNITED STATES DISTRICT COURT FOR

THE MIDDLE DISTRICT OF FLORIDA

Carla Newkirk, on her own behalf
and on behalf of her minor offspring,
J.D.

Plaintiff,

vs.

Case No.: 3:23-cv-281-HLA-mcr

STATE OF FLORIDA; COUNTY OF
DUVAL; CITY OF
JACKSONVILLE; ROBERT
FISHBACK; JOHN GUY; RHASHA
NEWKIRK; IRIS NEWKIRK;
JESSICA JORDAN; ERIC JORDAN;
JAMES MCGARY; MIKE TURNER;
DUVAL COUNTY PUBLIC
SCHOOLS; AND DOES 1-100;

Defendants.

1

# **COMPLAINT**

1.      Comes now, Carla Newkirk, living woman (Plaintiff) invoking all constitutional rights, for a claim for relief against Defendants above named, asserts:

## **NATURE OF ACTION**

2.      Plaintiffs in this action seeks declaratory and injunctive relief pursuant to 42 U.S.C. §1983 and the Due Process and Equal Protection Clauses of the United States Constitution and the Florida Constitution.

3.      The United States District Court for the Northern District of Florida has subject matter jurisdiction over this lawsuit under 28 U.S.C. §1331, as it arises under The Constitution of the United States, laws, or treaties of the United States.

4.      Venue is proper in this Court under 28 U.S.C. §1391(b), as most or all of the events giving rise to this claim occurred in Duval County, Florida. All of the defendants reside in the state of Florida.  Please make reference to case number #4.23-cv-66-RH-MJF which is filed in the Northern District. Jurisdiction is proper for the Middle District due to the Parties residing in Duval County.

**PARTIES**

5.      Plaintiff is a living breathing woman and the mother of her living, breathing offspring, JD. Both the Plaintiff and her offspring ("Plaintiffs") have resided in Duval County during all relevant times hereto.

6.      Defendants COUNTY OF DUVAL ("Duval County") and DUVAL COUNTY PUBLIC SCHOOLS ("DCPS") are and were at all times relevant hereto municipalities incorporated under the laws and constitutions of the State of Florida and United States of America. Duval County and DCPS are empowered by the FLORIDA Revised Statutes and the State and Federal government. All agents, officers, servants, entities and employees of all above named County agencies were at all times hereto acting under the color of law.

7.      Defendants STATE OF FLORIDA (the "State") is incorporated under the laws and constitutions of the State of Florida and The United States of America. Above named Defendants are empowered by the Florida Revised Statues and the State and Federal Government. All agents, servants, officers, entities and employees of all above named State agencies were at all times hereto acting under the color of law.

8.      Defendant JOHN GUY (GUY), in his individual and official capacity is a Circuit Judge for the Fourth Judicial Circuit Courts of Florida in

3

Duval County. The acts committed by Defendant GUY were not only judicial acts, but also criminal acts as classified under title 18 U.S.C. §§ 242 & 243. Defendant GUY was committing acts under the guise of Judicial Acts and is liable to the Supreme Authorities of the United States Constitution.

9.    Defendant ROBERT FISHBACK (FISHBACK) is a resident of Florida and practices law with his firm Law Office of Robert Fishback. At all times relevant hereto, FISHBACK was licensed to engage in the practice of law in the state of Florida and practicing law.

10.    Defendant RHASHA NEWKIRK is a resident of Duval County and is the biological sister of Plaintiff.

11.    Defendant IRIS NEWKIRK is a resident of Duval County and is the biological mother of Plaintiff.

12.    Defendant JESSICA JORDAN (J. JORDAN) is a resident of Duval County and is the biological sister of Plaintiff. J JORDAN has at all times relevant hereto married to Defendant ERIC JORDAN.

13.    Defendant ERIC JORDAN (E. JORDAN), in his official and individual capacity, is a resident of Duval County and has been an employee of the CITY OF JACKSONVILLE at all times relevant hereto. Defendant JORDAN

committed said acts in his individual capacity, as well as in his official capacity as a Municipal employee, using access to City records database to aid in the defamation and libel of Plaintiff.

14.    Defendant JAMES MCGARY (MCGARY) is the biological father of JD who has been inactive in her upbringing. The whereabouts of Defendant MCGARY are currently unknown.

15.    Defendant MIKE TURNER, based upon information and belief is a resident of Duval County and was acting in his position as an investigator for DCF. More information will be provided when it is made available to Plaintiff.

16.    DOES 1-100 are sued herein under fictitious names for the reason that their true names and identities are unknown to Plaintiff except that they may be connected in some manner with Defendants and may be agents, attorneys, servants, officers, employees, employers, representatives, co-venturers, co-conspirators, associates, or independent contractors and/or were in some manner responsible for the injuries or damages to Plaintiff and their true names, identities, capacities, activities and responsibilities are presently unknown to Plaintiff. Plaintiff requests leave to amend this Complaint to show the true names, capacities, activities and/or responsibilities when the same have been ascertained.

17.    All of the acts and failures to act alleged herein were duly performed by and attributable to all Defendants, including DOES 1 to 100, each acting as a successor, agent, alter ego, employee, indirect employer, joint employer, integrated enterprise and/or under the direction and control of the others, except as specifically alleged otherwise. Said acts and failures to act were within the scope of such agency and/or employment, and each Defendant participated in, approved and/or ratified the unlawful acts and omissions by the other Defendants asserted herein. Whenever and wherever reference is made in this Complaint to any act by a Defendant or Defendants, such allegations and reference shall also be deemed to mean the acts and failures to act of each Defendant acting individually, jointly, and/or severally.

## FACTS

18.    Plaintiff is a devoted full time mother who has been the primary care provider of JD since her birth in 2007. JD has thrived in the care of her mother, excelling in school, sports and her personal life. JD maintained A and B grades and participated in many extracurricular activities while in Plaintiff's care. Please see *Exhibit B*.

19.    Plaintiff has always provided exceptional care for her family, and has been actively accomplishing her goals for her career and long term

financial security for her family. Plaintiff completed her Bachelor's Degree in

Human Resources while working at the Naval Base in Jacksonville and plans to

complete her Masters Degree. "The courts" (referring to The Circuit Court of The

Fourth Judicial Circuit in and for Duval County Florida) were made aware of this

information and disregarded it when making orders that violated the rights of

Plaintiff. Please see Exhibits.

   20. DEFENDANT MCGARY is the biological father of JD.

MCGARY has been absent in JD's life for over 13 years, the majority of JD's life,

and did not take part in raising JD. Plaintiff was awarded child support in 2012.

MCGARY failed to make child support payments which totaled in excess of

$35,000. MCGARY was absent during court proceedings until he filed to be

removed from child support. The courts have never held MCGARY accountable

for neglecting to pay child support. The courts removed a majority of the back

payments, leaving him only $13,000 in arrears. The courts or state employees

(DOES 1-100) altered dates in their system to cover up and hide the changes that

they made to MCGARY's child support payments. MCGARY was removed from

the custody case by Judge JOHN GUY. Plaintiff was never made aware of these

orders of the courts and was not given opportunity to appeal. Please see Exhibits. .

   21. Plaintiff has been estranged from her family for multiple years,

and her family members were not active in raising JD. Plaintiff's family did not

provide financial help for after school care or summer camps or activities in which JD thrived in while she was in the care of Plaintiff. *See exhibit B.* Plaintiff's family has a long history of mental abuse towards Plaintiff.

22.    On 4/30/2021 defendants FISHBACK, R. NEWKIRK and I. NEWKIRK wrongfully filed a case "the case" against Plaintiff for custody of JD. Plaintiff was never served or notified of this case. The docket falsely states that I. NEWKIRK had custody of JD, despite having shown no proof of custody being given to I. NEWKIRK or any other family member. Plaintiff had been the only one to ever have custody of JD, which was filed with the courts when she was granted child support in 2012. Plaintiff asked I. & R. NEWKIRK to produce any document to prove that they had custody but could not produce any documentation stating this. See exhibits.

23.    On 9/21/2021 a summons for this case was sent to Plaintiff, nearly 5 months after the case was opened without Plaintiff's knowledge. Plaintiff had no idea she was in court and was not aware that a case was brought to court, which is illegal because Plaintiff was never served. Around this same time R. NEWKIRK and J. JORDAN, with the help of I. NEWKIRK and other family, illegally kidnapped JD and took her into hiding. The above named Defendants withheld the phone and internet from Plaintiff to keep her from talking or repeatedly calling the police for help.

24.     Plaintiff was being held against her will under the control of her family. Plaintiff was not allowed to send a response to the Summons she received. Plaintiff's family restricted her from using the computer, Wi-Fi, and communicating with anyone outside of the Defendants. Defendants repeatedly Defamed the character of Plaintiff by telling everyone that Plaintiff was incapacitated. In order for Plaintiff to respond to the Summons, Plaintiff had to find a pen and pencil, and hand write a response at a doctor's appointment without I. NEWKIRK knowing. Plaintiff convinced I. NEWKIRK to take Plaintiff to a doctor's appointment, at which Plaintiff used this opportunity to send a response. On 10/08/21 a handwritten response was docketed in the courts. I. NEWKIRK did not know a response was being filed until she was served the response. See Exhibits.

25.     Plaintiff was being mentally abused and forcefully isolated from anyone, including her daughter, JD, who was illegally taken into hiding. The Plaintiff's family found out that Plaintiff was Recieving Social Security funds after an auto accident. I. NEWKIRK stated to Plaintiff that she owed them money, and used her Social Security funds for personal use, which left JD and Plaintiff without a home. I. NEWKIRK had taken charge of Plaintiff's social security funds so she was unable to leave to find other housing.

26.    Plaintiff's family had her removed from her long term home at ███████ in which she lived since 2015. I. NEWKIRK, ROBERT NEWKIRK, R. NEWKIRK vacated the home while they continued to hide JD. They used this situation to falsely say that Plaintiff was not paying bills, which was proven to be false. Plaintiff has always made all payments in full and on time. Defendants twisted around the truth to say that Plaintiff's water was turned off due to no payments despite it being for maintenance. See exhibit -. Evidence of Plaintiff's payments was filed with the courts and on 10/29/2021 and 10/27/2021 also explaining why she had to write a handwritten response, and asking the whereabouts of JD and requesting the return of the Social Security funds, and how they were granted access to changed JD's school from ██████████ to ██████ without consent and move them out of their home while Plaintiff was threatened to be "Baker Acted" at River Point Behavioral.

27.    They used threats against Plaintiff and informed Plaintiff that E. JORDAN, who worked for the City, would have Plaintiff "Baker Acted" if she did not comply with their demands that Plaintiff seek "mental help". This was a way to control Plaintiff.

28.    Plaintiff asked for a motion for hearing on 11/29/2021 to show perjury and false allegations were submitted as it listed Plaintiff as deceased and incapacitated. See Exhibit -. This was acknowledged and then excused by JUDGE

GUY as a typo in his chambers when Plaintiff pointed this out to the courts.
Plaintiff requested documents and proof and to date has never seen the documents
or shown documentation that a doctor gave Plaintiff's medical records information
to provide to the court.

29.    Defendant GUY never had court reporters in his chambers.
GUY made rulings that directly deprived Plaintiffs of their Fundamental Parental
Liberties that are protected by the United States Constitution by the First, Ninth
and Fourteenth Amendments. GUY failed to show a Compelling Interest and why
it would be necessary to achieve a permissible state policy to restrict Plaintiff of
her Fundamental Parental Rights. GUY allowed FISHBACK to present a case
based on hearsay and false, fraudulent, perjured paperwork. Plaintiff requested
evidence to prove the defamatory claims against Plaintiff and was told by
FISHBACK that he was too busy to produce the evidence, but will find it and
present it. No evidence or documentation was ever provided to substantiate the
claims made by defendants, despite this GUY ignored factual evidence provided by
Plaintiff and continued to violate their rights further.

30.    Defendant GUY's first rule but not docketed as he asked
FISHBACK to write but it was never done, he ruled to have I. NEWKIRK to find
JD and Plaintiff an apartment and return items taken without consent but
FISHBACK never wrote the order. Plaintiff asked for another emergency hearing

on 12/03/2021 in which GUY granted. Before they went into his chambers FISHBACK and GUY met in the conference room. When Plaintiff entered, GUY said he had run out of time and asked FISHBACK to write up something for him to sign, not hearing evidence or returning Plaintiff's daughter or advising her of JD's whereabouts.

31.    On 12/8/ 2021 Plaintiff filed a motion for contempt and return of JD. A notice of hearing was set for February 3. 2022 at 3 PM in zoom, but ended up in GUY's conference room in which he denied the motion for hearing even though evidence was provided and JD was being alienated from Plaintiff.

32.    12/15/2022 Plaintiff asked the court to provide her documents on why her daughter was being alienated from her, and provide what documents allowed this, as well as for I. NEWKIRK to be our payee, which was never granted. To date paperwork has not been provided on why this case was opened or why I. NEWKIRK was payee or JD taken without consent.

33.    A letter from the Attorney General was filed with the courts that stated that there was no reason for a case to be opened and copied to DCF was provided to the court but again ignored. See exhibits.

34.    On 1/07/2022 Plaintiff hired Laura Wright for $2,000 to represent her in court. Wright stated she was a student of GUY. Wright requested an emergency pick up order on 1/10/2022. GUY denied this as an emergency

despite evidence that was filed from health care providers, JD's after school coaches and teachers of JD's mental and behavioral decline being filed with the court, but ignored. The focus of the hearings was continually shifted back to was on why Plaintiff was on disability not the best interest of the minor child. *Doe et al, v. Heck et al (7th Cir. Ct. App. 2003)*

35.     Default for MCGARY was requested on 1/11/2022 by FISHBACK. Default was issued on same day and another default issued for MCGARY on 1/26/222 by FISHBACK. FISHBACK also requested a default for Plaintiff, which is also on docket even though a response had been filed.

36.     On 01/11/2022 FISHBACK made a motion to have JD testify even though Plaintiff was still her caregiver, despite not knowing JD's whereabouts. Plaintiff got help from the Mission House who provided Plaintiff with housing after I. NEWKIRK was illegally withholding Plaintiff's  Social Security funds and did not provide housing for Plaintiff and JD.  GUY granted this motion for FISHBACK and asked R. NEWKIRK to bring JD. The courts and GUY was aware that Defendants were isolating, alienating and brainwashing JD with slander and false allegations towards her mother, the Plaintiff.

37.     GUY refused to hold Defendants accountable for Contempts due to Plaintiff being on disability. GUY referenced that Plaintiff should still get employment while on disability. Plaintiff was still in therapy from her auto

accident and was not released medically and simultaneously had become a victim of severe mental abuse from her family who began withholding the Plaintiff's daughter, JD.

38.    FISHBACK wanted to serve MIKE TURNER (TURNER), an investigator for DCF. Plaintiff was never advised about this, The investigation from the Attorney General states that TURNER never interviewed Plaintiff and they were not sure why a case was opened against Plaintiff, and that this could be due to back owed child support and money from the auto accident. This evidence will be provided to this honorable court and was also filed with JUDGE GUY prior to temporary custody being granted.

39.    FISHBACK requested to keep continuing and allowing the family to alienate Plaintiff and JD. FISHBACK filed a continuance in which Plaintiff objected. Plaintiff wanted to know why a fraudulent case was allowed in a courthouse. Plaintiff was threatened with being "Baker Acted" by Defendants.

40.    Plaintiff allowed for her personal medical records to be filed with the courts and submitted them from her stay at Riverpoint, when  I. NEWKIRK and ROBERT NEWKIRK took Plaintiff. Upon Plaintiff  seeing the doctor, she stated that she was there because "My mom told me to come". Plaintiff was released soon after. Any documents from health care providers that referred to PTSD, depression and anxiety was a direct and proximate result of being a victim

of mental abuse from Plaintiff's family and being a victim of malicious parental

alienation, as well as events from her auto accident. Plaintiff's discharge

paperwork from her mental health professionals stated that she was fully capable of

caring for JD and there were no concerns for Plaintiff.

      41.    On 04/25/2022 there was a meeting in Defendant GUY's

chambers. At this meeting Defendant J. JORDAN stated to the Judge that she was

upset about a time when Plaintiff took her daughter, JD to the emergency room

following a visit with J. JORDAN and her husband E. JORDAN, when JD visited

them after Plaintiff was involved in a severe car crash. J. JORDAN stated that if

Plaintiff accused E. JORDAN of something, he could lose his jobs.

This is the reason why JD was scared to come home to Plaintiff, because she was

scared that Plaintiff would take her to the doctors. An emergency record will be

provided. All of this information was also filed with the circuit court. J. JORDAN

expressed why she and E. JORDAN were upset, which caused JD to be upset. This

plays into why they were alienating JD from Plaintiff. They didn't want her to go to

a doctor. To date JD has not been seen in a doctor's office or dental office. JD was

supposed to attend her annual checkup and get braces but she is now refusing to

go.

      42.    JD's mental and physical health has taken an extremely

concerning decline. Medical records show that JD is exhibiting signs of depression

and change in behavior including seclusion, refusing to eat, and mental illness
directly and proximately caused by her illegal, wrongful, and malicious kidnapping
by her family members. See Exhibit B.

43.    On 4/29/2022 FISHBACK said a parenting plan was needed.
GUY then granted that order and  states that I. NEWKIRK will pay Plaintiff $200
in child support from Social Security fund until JD was returned and funds
returned but no clarification was ever given on why they wrongfully took control
of Plaintiff's Social Security funds. The parenting plan was never followed by the
Defendants. Plaintiff wanted clarification on why an unconstitutional parenting
plan was being entertained, as well as why J. JORDAN and R. NEWKIRK took JD
out of town on the first day, and violated visitation agreements by making plans for
JD on all of the days that were ordered by the courts for visitation without reason
or cause. Contempt was as they did not comply with the court order and continued
to maliciously alienate Plaintiff and JD.

44.    A  motion to terminate the plan was filed on 6/2/22 because the
family was still alienating Plaintiff and JD. This motion was denied and a court
date set for 7/21/22. During this time R. NEWKIRK was getting evicted from her
apartment. R. NEWKIRK requested for Plaintiff's Social Security funds to be
transferred to her. This request was granted on 10/21/2022 so that R. NEWKIRK
could cover cost for her eviction and unpaid bills which is listed in court

documents. JD was getting benefits due to Plaintiff being on disability, which further motivated R. NEWKIRK to collect this money. This information will be provided to this honorable court.

45.  GUY refused to return JD to Plaintiff, stating on the record that this decision was because Plaintiff is on disability and had no car. R. NEWKIRK also had no car at this time, and was living with I. NEWKIRK with JD. Here JD shares a room and bounces between houses with J. JORDAN and E. JORDAN. The only reason that Plaintiff had no car is because hers was totaled in an accident which landed her on full disability and reason why estranged family showed up and had access to JD.

46.  R. NEWKIRK was granted temporary custody with no car and an active eviction. R. NEWKIRK was maliciously posting Defamatory youtube videos about Plaintiff containing false, harmful statements, slandering Plaintiff publicly. Evidence of this was provided to the courts and ignored.

47.  This shows a clear bias and a premeditated, intentional abuse of process by JUDGE GUY. FISHBACK was asked to be a third party even though he is the legal representation of the other parties. JUDGE GUY told Plaintiff not to copy any witness, just FISHBACK when Plaintiff wanted to see JD.

48.  FISHBACK sent emails to Plaintiff saying that JD didn't want to see her and that "that's how teenagers are". FISHBACK then told Plaintiff that

she needed to try and meet with JD when allowed, and stated that kids outgrow

their parents. FISHBACK was reported to the Florida bar.

49.     Plaintiff is now being retaliated against by all parties. Plaintiff

has now begun having problems with her disability among other unusual activity

taking place that Plaintiff has not experienced before. Plaintiff requested an

investigation with the Social Security office and it was granted. Plaintiff's benefits

have been corrected. Evidence will be provided. They have illegally gained control

her funds so that she will lose her home. Plaintiff got assistance until investigation

on what happened was conducted in which her funds where restored. Plaintiff

continued to get emails from FISHBACK stating that her daughter didn't want to

see her. Also fabricated claims of false dates of "Baker acts" on Plaintiff, no proof

has been provided on the date listed. Family provided false and defamatory

information to JD's school, telling them that there was a court order for no contact

for Plaintiff, will be provided the note that R. NEWKIRK listed in school records

with no court order known to Plaintiff.

50.     Plaintiff filed an appeal pro se. The appeals court sent the case

back to lower court to be corrected and rehearing but when rehearing was filed the

court closed the case, which prevented Plaintiff from having the option to appeal

the final order from JUDGE GUY.

# CAUSES OF ACTION

## <u>COUNT II</u>

### 42 U.S.C . 1983

**Against Defendants STATE OF FLORIDA; COUNTY OF DUVAL; CITY OF JACKSONVILLE; JOHN GUY; ROBERT FISHSBACK; MIKE TURNER; ERIC JORDAN and DOES 1-100.**

51.     Plaintiff reasserts and reincorporates by reference all of the facts and assertions contained in the preceding and foregoing paragraphs of this pleading.

52.     At all times relevant to this action, Defendants were acting under color of state law.

53.     Defendants unlawfully deprived Plaintiffs of their civil rights when they aided in the malicious kidnapping and alienation and abuse of JD, and unconstitutionally deprived Plaintiffs of their rights to substantive and procedural due process, equal protection, and to raise, be a part of, and maintain a family; among other violations that may be determined during discovery.

54.     Defendants used Plaintiff's disability as a reason to deprive her of her constitutional rights, directly violating the Equal Protections Clause of the Fourteenth Amendments.

55.    Parental rights are protected at Strict Scrutiny level and for Defendants to restrict Plaintiffs of their constitutional rights, the Defendants would have had to meet the requirements for strict scrutiny which are:

1. The state must have a **compelling interest**

2. The law or policy must be **narrowly tailored**

3. The law or policy must be the **least restrictive means** of achieving the policy.

*"Texas virtually concedes that its historically rooted dual system of financing education could not withstand the strict judicial scrutiny that this Court has found appropriate in reviewing legislative judgments that interfere with fundamental constitutional rights or that involve suspect classifications. If, as previous decisions have indicated, strict scrutiny means that the State's system is not entitled to the usual presumption of validity, that the State, rather than the complainants, must carry a "heavy burden of justification," that the State must demonstrate that its educational system has been structured with "precision," and is "tailored" narrowly to serve legitimate objectives, and that it has selected the "less drastic means" for effectuating its objectives, the Texas financing system and its counterpart in virtually every other State will not pass muster."* <u>San Antonio ISD v. Rodriguez, (1973)</u> *"Where there is a significant encroachment upon personal*

*liberty, the State may prevail only upon showing a subordinating interest which is compelling,"* <u>*Bates v. Little Rock, 361 U. S. 516, 524.*</u> *The law must be shown "necessary, and not merely rationally related, to the accomplishment of a permissible state policy."* <u>McLaughlin v. Florida, 379 U. S. 184, 196. See Schneider v. Irvington, 308 U. S. 147, 161.</u>

56.     The state did not have a compelling interest in this case to violate the Fundamental Liberties of Plaintiffs, and remove JD from Plaintiff. There was no proof or fact of anything against Plaintiff in this court case that could even remotely be construed as sufficient to meet the Due Process bar for declaring a parent unfit. A fact specific, individualized hearing on these issues following a level of Due Process approaching that of criminal Due Process with **"clear and convincing"** evidence is required for a finding of unfitness. *"Similarly, "the best interest of the child" is not the legal standard that governs parent's or guardian's exercise of their custody: so long as certain minimum requirements of child care are met, the interests of the child may be subordinated to the interests of other children, or indeed even to the interests of the parents or guardians themselves..."* <u>Reno v. Flores</u>

57.     The state **must** subordinate and treat *de minimis* the State's concern for the child's best interest over the Fundamental Liberty interest of

parents in the care, custody, and control of their child. The state must **prove** that the minimum requirements of the child are **not** being met before it can do more than temporarily intervene.

58.    The acts committed by Defendant GUY were not only judicial acts, but also criminal acts as classified under title 18 U.S.C. §§ 242 & 243. Defendant GUY was committing acts under the guise of Judicial Acts and is liable to the Supreme Authorities of the United States Constitution.

59.    At all times relevant hereto, Defendants acted pursuant to a policy or custom of depriving Plaintiffs of their civil rights.

60.    Defendants failed to adopt clear policies to ensure that individuals such as Plaintiffs did not have their civil rights violated.

61.    The conduct of Defendants proximately deprived Plaintiffs of rights protected by the Constitution or the laws of the United States.

62.    Defendants' actions and conduct, as outlined in all preceding and foregoing paragraphs of this pleading, were a direct and proximate cause of the constitutional and civil rights deprivations suffered by Plaintiff.

## COUNT IV:

### Defamation, Slander; Libel Per Se
### Against All Defendants

63.    The Defendants engaged in defamation per se when they did the following:

64.    R. NEWKIRK has repeatedly made many TikTok and YouTube videos and posts on other platforms which wrongfully accused Plaintiff of committing Social Security fraud, had her car repossessed and other fraudulent statements that apply to herself as proof will be provided. R. & I NEWKIRK have been brainwashing and advising JD that Plaintiff was not capable of caring for her which is mental abuse towards JD and premeditated parental alienation. None of R. NEWKIRK's claims have ever been proven with evidence. JD has had an extreme decline while with R. NEWKIRK in school and appearance while having no stable housing.

65.    E. JORDAN has also made comments on Instagram and other platforms of slander and fraudulent statements. All statements can be proven as false. Proof will be provided.

66.    J. JORDAN has made statements to family members and acquaintances and spread false, defamatory stories and statements about Plaintiff, as well as aided in the brainwashing of JD with statements of hate towards Plaintiff

(parental alienation). This information was presented to JOHN GUY in his chambers.

67.    JOHN GUY wrongfully declared Plaintiff unfit, stating that the reason was because she could not work while on disability. This is a reason why GUY did not return Plaintiff's daughter, because had no steady employment. GUY disregarded that Plaintiff's income has been disability since 2012 due to a severe car accident. Plaintiff showed a long history and pattern of stability and the ability to always meet the minimum requirements of the child (Reno v. Flores). Not only did Plaintiff meet the minimum requirements of her child, but went above and beyond providing stability regardless of any circumstance. Prior to Plaintiff's auto accident she was at Naval Station, Jacksonville on the ticket to work until this which stopped recovery with retaliation and now full time disability. Plaintiff still has her own two bedroom residence for herself and JD which the judge was fully aware of.  JUDGE GUY negligently and intentionally granted temporary custody to R. NEWKIRK while she was actively being evicted from her residence.

68.    FISHBACK sent unethical emails about a private family matter that he had no factual knowledge about.  FISHBACK made fraudulent statements about Plaintiff not caring about her daughter and falsely stated that JD did not want to see Plaintiff, stating that "kids outgrow their parents".  Emails will be provided.

FISHBACK stated that Plaintiff was not mentally stable. FISHBACK had no medical experience or qualifications to any degree to diagnose Plaintiff and made statements about her mental health or personal life. FISHBACK practiced law as an attorney in bad faith, when he knowingly and intentionally built a fraudulent case with no evidence provided. FISHBACK stated that Plaintiff was deceased in his filing multiple times, likely contributing to the reason why Plaintiff was not served until nearly 5 months after the Family Court case was initially opened.

69.     I. NEWKIRK knowingly and intentionally initiated a fraudulent case along with R. NEWKIRK and J. JORDAN. Family did not know as they falsely advised family and friends that Plaintiff was incapacitated.  I. NEWKIRK and Defendants isolated Plaintiff against her will until Plaintiff found the means to receive help on her own to leave the abusive situation.

70.     Defendant's malicious, intentional, and repeated conduct clearly exposes Plaintiff to hatred, contempt, and ridicule from family, friends, school staff, community members, even extending to the general public due to Defendants publicly posting Defamatory statements about Plaintiff on multiple major social media platforms.

71.     The Defendants' statements amount to defamation per se and Plaintiff's injury is presumed.

## COUNT VII

### Intentional Infliction of Emotional Distress
### Against All Defendants

72.    Plaintiff reasserts and reincorporates by reference all of the facts and assertions contained in the preceding and foregoing paragraphs of this pleading.

73.    All above named Defendants have engaged in extreme and outrageous behavior towards Plaintiffs. The aforementioned actions constitute a pattern of illegal conduct that remained ongoing until present day. Defendants' actions as described above were done with malice and with the intent to cause, or the knowledge that it would cause, severe emotional and mental distress to Plaintiffs.

74.    As a direct result of the wrongful conduct of the Defendants and the life altering events that proximately stemmed from their actions, Plaintiffs have suffered and continue to suffer from injuries including but not limited to severe emotional and mental distress, physical manifestations of emotional

distress, including post traumatic stress; psychological injuries, shame and embarrassment, clinically diagnosed depression for both Plaintiffs, thereby entitling Plaintiffs to relief related thereto, as stated herein, including an award of special, general, and punitive damages.

## DAMAGES

75.     Plaintiff reasserts and reincorporates by reference all of the facts and assertions contained in the preceding and foregoing paragraphs of this pleading.

76.     As a direct and proximate result of Defendants' actions and/or failure to act, Plaintiff has been damaged as set forth above and herein.

a. A preliminary and permanent injunction against Defendants and its directors, officers, agents, employees and representatives and in and all persons acting in concert with them from engaging in each of the unlawful practices set forth herein;

b. A declaratory judgment that the practices complained of in this Complaint are unlawful and violate 42 U.S.C. 1983;

c. A reversal of the order put in place by JOHN GUY granting custody of JD to unfit, mentally abusive family members.

d. The immediate safe return of JD into the custody of Plaintiff and for full custody to be reinstated to Plaintiff.

e. For all parties to be held accountable for the mental and physical as well as financial losses of both plaintiffs.

f. Such further relief as the Court deems appropriate.

Date of signing: March 10th, 2023.

Signature of Plaintiff _____

Printed Name of Plaintiff _Carla Newkirk_____

EXIBITS ATTACHED

28